Scott J. Ferrell, Esq. (SBN 202091)
PACIFIC TRIAL ATTORNEYS
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Telephone (949) 706-6464
Facsimile (949) 706-6469
E-mail: sferrell@pacifictrialattorneys.com
Attorneys for Plaintiffs CHERYL THURSTON and
DOMINICK MARTIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL THURSTON, an individual, and DOMINICK MARTIN, an individual,<br><br>                    Plaintiffs,<br><br>    -against-<br><br>CANADA GOOSE US, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case:<br><br><br>**COMPLAINT** |

Plaintiffs Cheryl Thurston and Dominick Martin (collectively, "Plaintiffs"), allege the following upon information and belief based upon investigation of counsel, except as to their own acts, which they allege upon personal knowledge:

## INTRODUCTION

1.     As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today

that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.,* No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson,* 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2. According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the Internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the ADA almost three decades ago. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'''" *Del-Orden,* 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

COMPLAINT

diminish a person's right to fully participate in *all aspects of society,* yet many people with physical or mental disabilities have been precluded from doing so because of discrimination." *Del-Orden,* 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden).* "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.' *PGA Tour,* 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages **available indiscriminately to other members of the general public',** *National Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass 'n,* 37 F.3d 12, 20 (1st Cir. 1994)).

3.    Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a).

4.    Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

5.     Plaintiffs are blind individuals who require screen reading software to read website content and access the internet. Defendant Canada Goose US, Inc. ("Defendant") maintains its website, www.canadagoose.com (the "Website"), in such a way that it contains numerous access barriers preventing Plaintiffs, and other blind and visually-impaired individuals, from gaining equal access to the Website. Defendant's denial of full and equal access to its website, and therefore its products and services offered thereby, are a violation of Plaintiffs' rights under California's Unruh Civil Rights Act and the ADA.

## JURISDICTION & VENUE

6.     The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a) (3) & (a) (4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

7.     Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

8.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to this claim occurred.

## PARTIES

9.     Plaintiff Cheryl Thurston resides in San Bernardino County, California. Plaintiff Dominick Martin resides in Orange County, California. Plaintiffs are permanently blind and use screen readers in order to access the internet and read website content. Despite several attempts to use and navigate the Website, Plaintiffs have been denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website. The access barriers on the Website have caused a denial of Plaintiffs' full and equal

COMPLAINT

access multiple times in the past, and deterred Plaintiffs on a regular basis from accessing Defendant's website.

10.    While Plaintiffs genuinely want to avail themselves of Defendant's goods and services as offered on Defendant's website, Plaintiffs have dual motivations: they also are "testers," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.,* Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiffs advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 954 (7th Cir. 2006). Plaintiffs have filed multiple lawsuits against various operators of commercial websites under Title III of the ADA as part of their advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiffs intend to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial website and others are fully and equally enjoyable to and usable by visually-impaired persons, including themselves.

11.    Plaintiffs are informed and believe, and thereon allege, that Defendant Canada Goose US, Inc. ("Defendant") is a Delaware corporation with its principal place of business located in Williamsville, New York. Plaintiffs are informed and believe, and thereon allege, that Defendant is an affiliate/subsidiary of Canada Goose, Inc., and owns, operates and provides to the public the Website. The Website provides access to Defendant's array of services, including descriptions of its products, amenities and services, and many other benefits related to these facilities and services. The Website is a public accommodation within the definition of Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(7) and likewise is a "business establishment" within the meaning

of the Unruh Civil Rights Act, California Civil Code § 51 et seq. The Website is a service, privilege, and advantage and accommodation of Defendant's services.

12.     At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Canada Goose US, Inc. and DOE Defendants will hereafter collectively be referred to as "Defendant").

13.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

## FACTS

### Applicability of the ADA and the Unruh Act to Commercial Websites

14.     The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

15.     Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

COMPLAINT

16.     The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic **components** for making websites accessible including, but not limited to: adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

17.     Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites. *See, e.g., Carroll v. Fedfinancial Fed. Credit Union,* -- F. Supp. 3d --, Civil No. 2018 WL 3212023, at *4-*7 (E.D. Va. June 25, 2018); *Castillo v. Jo-Ann Stores, LLC,* 286 F. Supp. 3d 870, 874-83 (N.D. Ohio Feb. 13, 2018); *Gathers v. I-800-Flowers.com, Inc.,* Civil Action No. 17-cv-10273-IT, 2018 WL 839381, at *2-*5 (D. Mass. Feb. 12, 2018); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut,* Case No. 2:16-cv-08211-ODW(SS), 2018 WL 566781, at *3-*8 (C.D. Cal. Jan. 24, 2018); *Frazier v. E.L.I. Trading, Inc. d/b/a Mica Bella Cosmetics,* Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00024-AJS (member case) [Dkt. 191] (W.D. Pa. Jan. 11, 2018); *Del-Orden v. Bonobos, Inc.,* No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *3-*15 (S.D.N.Y. Dec. 20, 2017); *Rios v. New York & Co., Inc.,* Case No. 2:17-ev-04676-0DW (AGRx), 2017 WL 5564530, at *2-*7 (C.D. Cal. Nov. 16, 2017); *Access Now, Inc. v. Blue Apron, LLC,* Civil No. 17-cv-116-JL, 2017 WL 5186354, at *2-*11 (D.N.H. Nov. 8, 2017); *Gorecki v. Dave & Buster's Inc.,* Case No. CV 17-1138 PSG (AGRx), 2017 WL 6371367, at *2-*6 (C.D. Cal. Oct. 10, 2017); *Reed v. CVS Pharmacy, Inc.,* No. CV

17-3877-MWF (SKx), 2017 WL 4457508, at *3-*6 (C.D. Cal. Oct. 3, 2017); *Andrews v. Blick Art Materials, LLC,* 268 F. Supp. 3d 381, 387-405 (E.D.N.Y. Aug. **1,** 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, NA.,* No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at *5 (C.D. Cal. July 27, 2017) (citing *Gorecki v. Hobby Stores, Inc.); Markett v. Five Guys Enterprises LLC,* No. 1:17-cv-00788-KBF, 2017 WL 5054568, at *2-*3 (S.D.N.Y. July 21, 2017); *Frazier v. Cogo's, Co.,* Case Nos. 2:16-cv-01898-AJS (lead case); 2:17-cv-00091-AJS (member case) [Dkt. 171] (W.D. Pa. June 27, 2018) (consent decree); *Gorecki v. Hobby Lobby Stores, Inc.,* No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736, at *3-*7 (C.D. Cal. June 15, 2017) (Walter, J.); *id.* at *7 ("[T]his is a relatively straightforward claim that [defendant] failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website. There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts--including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.,* 257 F. Supp. 3d 1340, 1343-51 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial), *appeal docketed,* No. 1713467 (11th Cir. Aug. 1, 2017); *Gniewkowski v. Lettuce Entertain You Enters., Inc.,* 251 F. Supp. 3d 908 (W.D. Pa. 2017); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.,* No. 8:17-cv-00060-LSC-CRZ [Dkt. 9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.,* Nos. 2:16-cv-01898-AJS (lead case), 2:17-cv-00269-AJS (member case) [Dkt. 99] (W.D. Pa. Apr. 11, 2017) (consent decree); *Gil v. Winn-Dixie Stores, Inc.,* 242 F. Supp. 3d 1315, 1317-21 (S.D. Fla. 2017); *Nat'l Ass'n of the Deaf v. Harvard Univ.,* Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary

jurisdiction doctrine), *adopted in Nat'l Ass 'n of the Deaf v. Harvard Univ.,* 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deg' v. Massachusetts Inst. of Tech.,* Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass 'n of the Deaf v. Massachusetts Inst. of Tech.,* 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.,* No. 5:15-cv-01738-MWF-KK, [Dkt. 17 at 10] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp. 3d 565, 576 (D. Vt. 2015); *James Patrick Brown v. BPS Direct, LLC, et al.,* Case No. LACV 14-04622 JAK (JEMx), [Dkt. 30 at 4-7] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.); *Penney v. Kohl's Dep't Stores, Inc., et al.,* No. 8:14-cv-01100-CJC-DFM [Dkt. 12 at 3] (C.D. Cal. Sept. 23, 2014) (Carney, J.); *National Ass 'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196, 200-02 (D. Mass. 2012); *Shields v. Walt Disney Parks and Resorts US, Inc.,* 279 F.R.D. 529, 559 (C.D. Cal. 2011) ("The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *Brintley v. Aeroquip Credit Union,* Case No. **17-13912** [Dkt. 37] (E.D. Mich. Aug. 30, 2018); *Brintley v. Belle River Community Credit Union,* Case No. 17-13915 [Dkt. 38] (E.D. Mich. Aug. 30, 2018); *Gomez v. General Nutrition Corp.,* No. 1:17-cv-22747-MGC [Dkt. 62] (S.D. Fla. Aug. 29, 2018); *Reed v. 1-800-Flowers.com, Inc.,* -- F. Supp. 3d --, No. 2:17-cv-05713 (ADS)(AYS), 2018 WL 4054879, at *4-*9 (E.D.N.Y. Aug. 24, 2018); *Tawam v. APCI Fed. Credit Union,* No. 5:18-cv-00122, 2018 WL 3723367, at *3-*8 (E.D. Pa. Aug. 6, 2018); *Haynes v. Dunkin' Donuts LLC, --F*ed. Appx. --, 2018 WL

3634720, at *2 (11th Cir. July 31, 2018); *Brintley v. Aeroquip Credit Union,* -- F. Supp. 3d --, Case No. 17-13912, 2018 WL 3497139, at *2-*7 (E.D. Mich. July 20, 2018); *Brintley v. Belle River Community Credit Union,* Case No. 17-13915, 2018 WL 3497142, at *2-*7 (E.D. Mich. July 20, 2018).

18.   As noted above, Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

**Defendant's Web-Only Service Is Subject to the ADA and the Unruh Act**

19.   The district courts and courts of appeals in several U.S. circuits, including the First, Second and Seventh Circuits, have interpreted the provisions of the ADA to include, as public accommodations, websites and other entities or systems not connected to physical structures. *See, e.g., Carports Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.* (1st Cir. 1994) 37 F.3d 12, 19 ("travel service" that did not have brick and mortar location was public accommodation under the ADA); *Andrews v. Blick Art Materials, LLC* (E.D.N.Y. 2017) 268 F.Supp.3d 381, 391-398 (retailer's website was a place of public accommodation under the ADA, and thus retailer was prohibited from discriminating against visually impaired consumers on website); *Markett v. Five Guys Enterprises LLC* (S.D.N.Y. July 21, 2017) 2017 WL 5054568, at *2; *National Federation of the Blind v. Scribd* (D. Vt. 2015) 97 F.Supp.3d 565, 568-576 (digital library's website and mobile applications were places of public accommodation under Title III of the ADA); *Straw v. American Bar Ass 'n* (N.D. Ill. Feb. 11, 2015) 2015 WL 602836, at *6.

20.   While some federal circuits, including the Ninth (which includes California), take a different view, and require that a website be integrated with physical locations in order to be considered a "public accommodation" within the meaning of Title III of the ADA *(see, e.g.,; Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104, 1114; *National Federation of the Blind v.*

*Target Corp.* (N.D. Cal. 2006) 452 F.Supp.2d 946, 949-956), the reasoning of these cases is, as set forth in *Andrews, supra,* too narrow and rigid to permit a reasonable application of the ADA:

> "The *Target* litigation lays bare the unworkability of the requirement that a website is only subject to the ADA if its use involves a connection to a physical store. Disabled individuals have a right to "pre-shop" in their home, but no right to actually make a purchase in their home. Disabled individuals have no right whatsoever to purchase goods or services from companies whose business models *(e.g.* television shopping channels, catalogs, online-only) are premised on having customers shop only from home.

> "While these theories of liability might conceivably be workable for a retail giant like Target, which has hundreds of stores nationwide, how would they apply to other public accommodations? Could a company that only sells goods online become subject to the ADA's regulatory regime overnight if it decides to open a physical shop or showroom? What if that business only opens a single location? Does the business's website only need to be accessible to individuals who live close enough to the one store so that it is possible they may shop there one day? What if the company shutters the store—is it free to begin discriminating anew on its website? ***A rigid adherence to a physical nexus requirement leaves pothole of discrimination in what would otherwise be a smooth road to integration. It would be perverse to give such an interpretation to a statute intended to comprehensively remedy discrimination."***

*Andrews, supra,* 268 F.Supp.3d at 397 (emphasis added).

21.     The U.S. Department of Justice ("DOJ has adopted the reasoning of the First, Second and Seventh Circuits with respect to applicability of the ADA. "While some courts in other circuits have held that title III does not apply to web-only services, this conclusion does not comport with the First Circuit's ruling in

*Carparts,* the ADA's legislative history, **or the Department of Justice's interpretation of title III."** DOJ Statement of Interest filed in *National Association of the Deaf, et al. v. Netflix, Inc.* U.S. District Court, District of Massachusetts Case No. 3:11-cv-30168, at 6 n.4 (emphasis added). It is well-established that the views of the DOJ regarding the ADA are entitled to deference. *Disabled Rights Action Committee v. Las Vegas Events, Inc.* (9th Cir. 2004) 375 F.3d 861, 876. Even the DOJ's statements of interest and amicus filings are entitled to deference. *M.R. v. Dreyfus* (9th Cir. 2012) 697 F.3d 706, 735 (DOJ's Statement of Interest in an ADA case is entitled to deference and "respect").

22.    With this background, this Court should recognize and adopt the reasoning of *Carparts, Andrews,* and the related cases cited above, determine that Defendant's website is a "business establishment" pursuant to the Unruh Act, and permit Plaintiffs to go forward with their website-only claim in this action. This is something this Court may do, notwithstanding the Ninth Circuit's contrary rulings on the issue: "In the absence of a controlling United States Supreme Court decision, [California courts] make an independent determination of federal law." *Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782-783. "Where the federal circuits are in conflict, the decisions of the Ninth Circuit are entitled to no greater weight than those of other circuits." *Id.* "In short, the presence or absence of a decision by the Ninth Circuit on this issue is not determinative." *Id.*

**<u>The Inaccessibility of Defendant's Website to the Visually-Impaired</u>**

23.    Defendant offers the Website, which provides, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations.

24.    Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiffs, equal enjoyment of and access to the Website. Due to Defendant's failure and refusal to remove access barriers on the

Website, Plaintiffs and other blind and visually impaired individuals have been denied equal enjoyment of and access to Defendant's services, advantages, privileges, and accommodations offered to the public through the Website.

25.    Defendant has denied blind individuals' equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the Website. The Website contained access barriers that prevented free and full use by Plaintiffs and other blind persons using screen reading software.

26.    The Website's barriers are pervasive and include, but are not limited to, the following:

(1)  Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Canada Goose customers were unable to determine what is on the Website, browse the site, and determine whether or not to purchase Defendant's products;

(2)  Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users;

(3)  Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users; and

COMPLAINT

(4)   Redundant title text. Title attribute text is the same as text or alternative text. The title attribute value is used to provide advisory information. It typically appears when the users hover the mouse over an element. The advisory information presented should not be identical to or very similar to the element text or alternative text.

27.     Due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers have been hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If the Website were accessible, Plaintiffs would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

28.     Despite several attempts to access the Website in recent months, the numerous access barriers contained on Defendant's website have denied Plaintiffs' full and equal access, and deterred Plaintiffs on a regular basis from accessing the Website. Similarly, based on the numerous access barriers contained on the Website, Plaintiffs have been deterred from purchasing Defendant's products as Plaintiffs would have been able to do by using the Website. Plaintiffs continue to attempt to utilize the Website and plan to continue to attempt to utilize such Website in the near future. Plaintiffs' dignitary interests as disabled persons have been harmed by Defendant's actions.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**

29.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

30.     Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[utilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

31.   Canadagoose.com is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 1281(7)(E).

32.   Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

33.   Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

34.   The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Patrons of Canada Goose Stores who are blind have been denied full and equal access to canadagoose.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

35.   Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

36.   As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiffs on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations

and/or opportunities of canadagoose.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

37.    Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

38.    The actions of Defendant were and are in violation of the ADA, and therefore Plaintiffs invoke their statutory right to injunctive relief to remedy the discrimination.

39.    Plaintiffs are also entitled to reasonable attorneys' fees and costs.

40.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiffs pray for judgment as set forth below.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT,**

**CALIFORNIA CIVIL CODE 4 51 *ET SEQ.***

41.    Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

42.    California Civil Code § 51 et seq. guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

43.    The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq. The Website is a service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiffs. This inaccessibility has denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. Defendant has violated the Unruh Civil Rights Act, California Civil Code § 51 et seq., in that Defendant has denied visually-impaired customers the services provided by the Website. These violations are ongoing.

44.    Defendant's actions constitute discrimination against Plaintiffs on the basis of a disability in violation of the Unruh Civil Rights Act, Cal. Civil Code § 51 et seq. in that: Defendant has constructed a Website that is inaccessible to Plaintiffs; maintains the Website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.  Defendant is also violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* in that the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.* Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

45.    The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.,* and, therefore, Plaintiffs are entitled to injunctive relief remedying the discrimination.

46.    Plaintiffs are also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.,* and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

47.    Plaintiffs are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiffs are also entitled to reasonable attorneys' fees and costs.

## PRAYER

Wherefore, Plaintiffs pray that this Court award damages and provide relief as follows:

1.    For injunctive relief, compelling Defendant to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.

2.    Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3.     Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated:  June 20, 2019             PACIFIC TRIAL ATTORNEYS

                                          By:     /s/ Scott J. Ferrell
                                                  Scott J. Ferrell, Esq.
                                                  Attorney for Plaintiffs

COMPLAINT